# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID JERRI, JR.<br>DAVID JERRI, SR.,<br>             Plaintiffs<br><br>    v.<br><br>FREDERICK HARRAN., et al.,<br>             Defendants | CIVIL ACTION<br><br>NO. 13-1328 |

## MEMORANDUM & ORDER

**Baylson, J.**                                                                                            August 16, 2013

In this civil rights case, there are two plaintiffs as noted above and multiple defendants, in the following categories:

    a.      Bensalem Township

    b.      Mayor of Bensalem Township (Joseph DiGirolamo)

    c.      Three individuals who are director (Harran), deputy director (Ponticelli) of Public Safety and a detective (Monaghan), all employed by Bensalem Township

    d.      Five individuals who are councilmen for Bensalem Township

    e.      Two private parties, one a business and the other the owner of the business.

The Complaint constitutes 416 separately numbered paragraphs of which 234 are factual allegations.

After extensive briefing and oral argument on August 14, 2013, and for the reasons stated at the hearing and below, the Court rules as follows:

    1.      The Complaint does not contain a "short and plain statement" of plaintiffs' claims as required by Rule 8, F.R.Civ.P. Further, the plaintiffs constantly allege that "defendants" as a

group, without any distinctions, are liable for virtually every claim of wrong-doing, even though certain acts were only committed by specific individuals. Plaintiffs have argued that "supervisory liability" can apply through the concept of "knowledge and acquiescence."

Although the Third Circuit has, in dictum in several cases, recognized that a theory of knowledge and acquiescence may serve as the basis of a § 1983 claim against a person in a supervisory role in relation to the alleged unconstitutional wrongdoing, the Court has never upheld such a judgment in a precedential decision. *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 71, (3d Cir. 2011); *Santiago v. Warminster Twp.,* 629 F.3d 121, 129 (3d Cir. 2010); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The court has refrained from defining the precise contours of what is required in order to plead or prove such a claim sufficiently. These decisions impose a high standard, and all but one of the Third Circuit's decisions have not proceeded beyond the motion to dismiss or summary judgment stage. The one case which resulted in upholding, in part, a preliminary injunction, *Pennsylvania v. Porter, infra,* has unique facts.

In *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 62-63, (3d Cir. 2011) Plaintiffs made a *Bivens* claim against ICE, the Assistant Secretary for Operations for ICE, the Deputy Assistant Secretary for Operations for ICE, and two Field Directors for ICE in the area, after they were subjected to allegedly unconstitutional behavior during a raid of their home. Plaintiffs asserted that these Defendants dramatically increased ICE operations designed to find and arrest illegal immigrants, without accordingly providing the necessary training to protect against unconstitutional conduct in the course of the operations. Plaintiffs further asserted that although Defendants had been on notice of the occurrence of unconstitutional conduct in the

2

course of operations, they "failed to develop meaningful guidelines or oversight mechanisms to ensure that home searches were conducted in a constitutional fashion…[or] to provide some sort of basic accountability for violations of the Constitution." Id at 65. The Third Circuit held that these allegations did not constitute a plausible claim for relief "on the basis of the supervisors' 'knowledge and acquiescence' or any other similar theory of liability," though the court refrained from deciding whether a supervisor may be held liable in the *Bivens* context if he or she did not directly participate in unconstitutional conduct. Id at 70. The court emphasized the well-settled principle that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." (quoting *Iqbal*, 129 S.Ct. at 1948) (citing *Monell v. N.Y. City Dep't of Social Servs.* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The court further explained that, while "[i]t is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct," it rejected the opportunity to determine what specifically is necessary to establish personal involvement, but assumed for the purposes of its decision "that a federal supervisory official may be liable in certain circumstances even though he or she did not directly participate in the underlying unconstitutional conduct." *Argueta*, 643 F.3d at 71-72.

In *Santiago v. Warminster Twp.,* 629 F.3d 121, 125 (3d Cir. 2010), the Plaintiff made §1983 claims against three senior police officers who she alleged had planned or acquiesced in the use of excessive force during a raid on her home, which caused her to have a heart attack. The Third Circuit held that Plaintiff had not stated a plausible claim for relief against these three Defendants because her allegation that she alone was subjected to unconstitutional mistreatment in

the course of the raid, while none of the several other people subjected to the raid were so treated, did not, "by itself, give rise to a plausible claim for supervisory liability against those who planned the operation." Id at 133. The court categorized the Plaintiff's theory of liability "under which a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations," as "a species of supervisory liability…not *respondeat superior* liability." (internal quotation marks and citation omitted). The court outlined the elements necessary to establish such a theory of liability as follows: "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates. In addition, a plaintiff must allege a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation." Id at 130.

In *A.M. v. Luzerne County Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) the Third Circuit outlined two viable theories of supervisory liability under § 1983. Firstly, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." (internal quotation marks and citation omitted). The court held that summary judgment against Plaintiffs was inappropriate in relation to this theory because "evidence in the record show[ed] that [the defendant juvenile detention administrators] had responsibility for developing policies and procedures…[and the Plaintiff] presented sufficient evidence to present a jury question on whether the Center's policies and procedures caused his injuries." *Id.* at 586. Secondly, the court explained that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed

4

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. The court held that summary judgment against Plaintiffs would be inappropriate in relation to this theory of liability as well because Plaintiff's evidence that the administrators "took little or no action to protect him [was] sufficient to present a genuine issue of material fact as to their knowledge of and acquiescence in the conduct of the child-care workers." Id.

In *Baker v. Monroe Township*, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) the Third Circuit noted that "[i]t is [ ] possible to establish section § 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior," citing to *Stoneking v. Bradford Area School Dist*. in support of this principle. In *Baker*, the court did not decide this issue because such a theory of liability had not been alleged. In *Stoneking*, the Third Circuit held that the Plaintiff student could maintain a § 1983 claim against Defendant principal, vice-principal, and superintendant of her school, after a teacher sexually abused her, "because she…alleged that defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused her constitutional harm." *Stoneking v. Bradford Area School Dist*., 882 F.2d 720, 725 (3d Cir. 1989).

In *Rode v. Dellarciprete,* the Third Circuit rejected the Plaintiff's assertion that the Pennsylvania Governor necessarily had knowledge of and acquiesced to the mistreatment of Plaintiff in her position as a civilian employee of the Pennsylvania State Police given "numerous articles that appeared in newspapers throughout the state and through the introduction of a legislative resolution seeking an investigation into racially motivated retaliation against [PA State Police] employees, the filing of grievances with the Governor's office of administration, and

telephone calls and correspondence with the office of the Lieutenant Governor." *Rode,* 845 F.2d at 1208. The court held that the Plaintiff's § 1983 claim against the Governor "was precluded by her failure to allege knowledge and acquiescence with the required particularity." *Id*. The court emphasized that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior,*" before going on to explain that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207 (internal citations omitted).

In *Chinchello v. Fenton*, 805 F.2d 126, 134 (3d Cir. 1986) the Third Circuit held that the Plaintiff inmate's *Bivens* claim, which alleged that the failure of the Director of the Bureau of Prisons to train, supervise, or discipline his subordinates so as to prevent them from engaging in unconstitutional treatment of inmates, could not survive summary judgment. The court reaffirmed its holding from *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981), that "while supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello*, 805 F.2d 133.

The Third Circuit in *Chinchello* relied on the precedent set out in *Rizzo v. Goode*, 423 U.S. 362, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976), where the Supreme Court "addressed and rejected the argument that a supervising public official has an affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello*, 805 F.2d 126 at 133. In that case the Supreme Court held that supervisory officials

6

cannot be held liable under a § 1983 claim merely for their "failure to act in the face of a statistical pattern" of unconstitutional misconduct when "the responsible authorities had played no affirmative part in depriving [Plaintiffs] of any constitutional rights." Id at 376; 377.

In *Pennsylvania v. Porter*, 659 F.2d 306, 324 (3d Cir. 1981), the en banc Third Circuit upheld the District Court's issuance of an injunction sought by the Commonwealth as parens patriae and granted relief against the mayor, police chief and a police officer, but a majority of the en banc Court reversed the injunction as to members the municipality Council because there was insufficient evidence they were responsible for the misconduct of police officers working under their supervision.

In this case, plaintiffs' allegations of "knowledge and acquiescence," are very general and fail to show any specific knowledge or conduct. The Court rejects plaintiffs' argument that their allegations are sufficient to establish supervisory liability.

2. The Court has **ORDERED** that plaintiffs shall file an Amended Complaint within thirty (30) days. The Court will require plaintiffs to eliminate arguments and purely evidentiary allegations, and satisfy the requirements of the Supreme Court's decision in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) and related Third Circuit cases, in pleading sufficient and specific facts to support their legal claims against each defendant. The Court notes that the Complaint unnecessarily contains numerous Counts under 42 U.S.C. § 1983, which has made the Complaint unduly complex. However, the Court will allow plaintiffs to plead their retaliation claims separate from their other § 1983 allegations.

3. Plaintiffs do state sufficiently specific allegations which relate to their claims of malicious prosecution and false arrest against Harran, the director, Ponticelli, the deputy director

of Public Safety, and detective Monaghan, and therefore, notwithstanding that the Court will require an Amended Complaint, the Motion to Dismiss by these defendants will be **DENIED** and discovery will proceed as to these individuals, initially focused on the issue of qualified immunity. The denial of these defendants' assertion of qualified immunity is without prejudice and may be asserted after discovery directed to this defense, which shall be prioritized, has been completed.

As to the contention of these defendants that there was probable cause for the arrest of plaintiffs, the Court notes this argument but must conclude, given the principle that plaintiffs' allegations must be construed in the light most favorable to them, that resolution of the issue of probable cause must await discovery.

4. The Court has concluded that the claims against the five defendants who are members of City Council are not plausible in the context of the other allegations. Plaintiffs have not made any showing that a member of the legislative branch of city government has legal responsibility, under generalized allegations of knowledge and acquiescence, concerning the initiation of criminal prosecution or retaliation against a volunteer fire fighter. The claims against these five defendants (Kissellback, Pilieri, Belfield, Knowles, Mathieu) are **DISMISSED** with prejudice.

5. As to the claims against Mayor DiGirolamo, the Court concludes that the Complaint as filed does not meet the requirements of federal pleading, but will give plaintiffs leave to include Mayor DiGirolamo as a defendant in the Amended Complaint, assuming plaintiffs can meet the pleading requirements and requirements of Rule 11.

6. Plaintiffs have conceded that their claims against all of the individual defendants in their "official capacity" are redundant to their claim against Bensalem Township, and are therefore

**DISMISSED** with prejudice.

7. Plaintiffs have conceded that their federal conspiracy claims should be **DISMISSED** with prejudice.

8. Plaintiffs fail to make allegations against Bensalem Township that can be reasonably construed as showing a policy, pattern, or practice, in violation of federal civil rights as required by *Monell v. Department of Social Services,* 436 U.S. 658 (1978) and its progeny. There was extensive argument on plaintiffs' *Monell* claims at the hearing. A careful reading of plaintiffs' Complaint shows that they alleged that Bensalem Township has policies and practices on the subject matters of the Complaint, including workplace harassment and retaliation and on employee discipline, including demotions and terminations, investigation of suspected criminal conduct and the filing of criminal charges based on criminal investigation (paragraphs 257-259; paragraphs 276-278; and paragraphs 288-290).

However, following all of those allegations that "defendants" (including Bensalem Township) had such policies, the Complaint alleges that "despite these policies, practices and procedures, and in derogation of them," the defendants' acts and omissions were inconsistent with the stated policies, practices and procedures. *See* paragraphs 260-270, 279-285, and 291-301.

Thus, the plaintiffs do not allege that a municipal defendant had policies and practices which were in violation of federal constitutional rights and civil rights laws, but rather, plaintiffs allege that Bensalem Township had appropriate policies but defendants did not follow them with regard to the plaintiffs.

Because plaintiffs have made allegations that are totally inconsistent with a *Monell* claim, Bensalem Township must be **DISMISSED** as a party defendant with prejudice.

The Court sees no reason to allow an Amended Complaint as to Bensalem Township because it would be contrary to what plaintiffs have already asserted, and allowing such a contrary allegation would violate the principles behind Rule 11, F.R.Civ.P.

9. The plaintiffs fail to allege that the two private defendants, Knights Collision Center and Michael Pierson, its owner, acted under color of state law, but seek supplemental jurisdiction under 28 U.S.C. § 1367. Plaintiffs unsuccessfully argued that their allegations under state law would allow this Court to proceed under federal question jurisdiction. In order to allow plaintiffs to persuade the Court to exercise supplemental jurisdiction over these defendants, the Court **ORDERS** briefs to be filed. Plaintiffs shall file their brief in support of supplemental jurisdiction within thirty (30) days, defendants shall reply within fourteen (14) days, and plaintiffs may file a reply brief within seven (7) days thereafter.

10. As to plaintiffs' claim that defendants retaliated against them for his protected speech, defendants move to dismiss under the principles of *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The Court will **DENY** defendants' Motion to Dismiss this claim. Defendants argue plaintiffs' claims under the Fourteenth Amendment are defective and different from those under the First Amendment, but the Court will not rule on this asserted distinction at this time or until discovery has been completed.

### Discovery

11. The Court will allow written discovery to proceed between plaintiffs and defendants, Harran, Ponticelli and Monaghan. The Court directs initial discovery to focus on defendants' assertion of qualified immunity. Interrogatories under Rule 33, the number of which shall be as limited by the Rule, and Requests for documents under Rule 34, shall be served

promptly, and any objections shall be specific. The Court encourages the parties to attempt to resolve disputes and to exchange responsive documents. However, no depositions shall take place until after the Court has ruled on any responses to the Amended Complaint.

The Court will stay discovery as to the other defendants, pending an Amended Complaint.

**BY THE COURT:**

**/s/ Michael M. Baylson**

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 13\13-1328 jerri v. harran\13cv1328.memo.order.docx