IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID JERRI, JR., et al., Plaintiffs, v. FREDERICK HARRAN., et al., Defendants. | CIVIL ACTION NO. 13-1328 |
|---|---|

**MEMORANDUM RE: POST-REMAND SUMMARY JUDGMENT**

**Baylson, J.**                                                                 June __23__, 2016

**I.     Introduction**

In an Order dated May 4, 2016, following remand from the Third Circuit, this Court reviewed Defendants' Motion for Summary Judgment as to Plaintiff David Jerri, Sr.'s First Amendment retaliation claim. ECF 202. The Court determined that Jerri, Sr. had submitted sufficient evidence for a jury to reasonably conclude that at least some of his speech was protected under the *Pickering* balancing test. But the Court had doubts about whether Jerri, Sr. had submitted any evidence showing that Defendants knew that Jerri, Sr. had engaged in protected speech. Concerned that Jerri, Sr. had not had ample opportunity to address the knowledge requirement, the Court requested additional briefing as to whether Defendants knew of Jerri, Sr.'s protected speech when they allegedly retaliated against him.

Based on this supplemental briefing, this Court concludes that Summary Judgment will be DENIED.

**II.    Background & Procedural History**

As originally filed in 2013, this case involved claims by a father and son, David Jerri, Sr. and David Jerri, Jr., who were firefighters for the Union Fire Company in Bensalem Township.

The pair sued various Bensalem Township officials for violations of Plaintiffs' constitutional rights.

In April 2014, after more than a year of often contentious litigation, Defendants filed a Motion for Summary Judgment, which this Court granted in June 2014.

Plaintiffs, represented by new counsel, appealed to the Third Circuit. In August 2015, the Third Circuit issued a non-precedential opinion affirming the grant of summary judgment as to Jerri, Jr.'s claims. *Jerri v. Harran*, 625 Fed. App'x 574, 583 (3d Cir. 2015) (non-precedential). As to Jerri, Sr.'s First Amendment retaliation claim, however, the Third Circuit remanded, instructing this Court to "consider *Pickering* and any other aspects of Jerri, Sr.'s claim that continue in dispute." *Id.* at 583.

On remand, this Court required the parties to submit contention statements. The Court also held a hearing on the Summary Judgment Motion and permitted the parties to submit additional briefing following the hearing. With the benefit of Defendants' pre-appeal Motion for Summary Judgment (ECF 120), Jerri, Sr.'s Response thereto (ECF 135), Defendants' Reply thereto, (ECF 143), the parties' post-remand statement of contentions (ECF 187, 190, 191), a hearing on the Motion (ECF 198), and the parties' post-hearing supplemental briefing (ECF 199, 200), the Court issued its May 4, 2016 Memorandum and Order (ECF 202, 203).

In the May 4, 2016 Order, the Court reviewed Jerri, Sr.'s speech and determined that a jury could reasonably conclude that at least some of Jerri, Sr.'s speech was made by Jerri, Sr. in his capacity as a citizen and that the speech involved a matter of public concern. Further, the Court decided that a jury could find that Jerri, Sr.'s interest in making the speech and the public's interest in receiving it outweighed Defendants' interests in maintaining an efficient workplace. Therefore, a jury could reasonably conclude that the speech was constitutionally protected.

The Court considered Defendants' argument that Jerri, Sr. had failed to show that Defendants knew of Jerri, Sr.'s protected speech. Because of the lengthy history of the case, the Court gave Jerri, Sr. "one additional, but last, opportunity to show where, in the existing factual record, there is any evidence from which a jury could conclude that either Defendants Harran or DiGirolamo had any knowledge of Jerri, Sr.'s protected speech prior to July 10, 2012." ECF 203.

Jerri, Sr. responded by arguing that Defendants had waived their "knowledge" argument by failing to raise it in their original Motion for Summary Judgment. Additionally, Jerri, Sr. supplied the Court with his contentions on the knowledge requirement and argued that a decision on the causation element is best left to a jury.

### III. Waiver

Jerri, Sr. correctly points out that Defendants did not argue that they lacked knowledge of Jerri, Sr.'s protected speech until after the Third Circuit appeal.[1] In fact, to support their arguments that they lacked knowledge of Jerri, Sr.'s protected speech, Defendants rely on affidavits that were prepared and filed only after the case was remanded. As a result, Jerri, Sr. argues that Defendants have waived their argument that Defendants lacked knowledge of Jerri, Sr.'s protected speech, at least for the purpose of summary judgment.

But Jerri, Sr. has failed to recognize that a district court may grant summary judgment *sua sponte* when the court has given "notice and an opportunity to oppose summary judgment." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (quoting *Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903, 910 (3d Cir. 1994)). Here, after the close of discovery, the Court notified Jerri, Sr. that the Court was concerned about his ability to establish knowledge and provided him with fourteen (14) days to respond to this

---

[1] The Court's prior Memorandum erroneously implied that Defendants had made this argument in their original Motion for Summary Judgment. ECF 202 at 5.

3

concern. ECF 203. Thus, regardless of Defendants' failures to raise the issue prior to the Third Circuit appeal, this Court would be within its discretion to grant summary judgment if Jerri, Sr. fails to raise a genuine issue of fact about Defendants' knowledge of the basis for Jerri, Sr.'s retaliation claim.

Moreover, Jerri, Sr. was on notice that Defendants intended to make this argument as soon as Defendants filed their post-remand statement of contentions on December 14, 2015. Thereafter, Defendants continued to make this argument in their filings and oral arguments to the Court. Thus, Jerri, Sr. has not been unfairly surprised.

For these reasons, the Court rejects Jerri, Sr.'s waiver argument.

## IV. Legal Standard for First Amendment Retaliation Claim

Having rejected Plaintiff's waiver argument, the Court now turns to the merits.

To establish a prima facie case for a First Amendment retaliation claim, a plaintiff must prove two elements: (1) he engaged in constitutionally protected conduct and (2) his engagement in this protected conduct was a substantial or motivating factor in the alleged retaliatory action. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). If the plaintiff makes this showing, the defendant may rebut by showing that the defendant would have made the same decision regardless of the plaintiff's involvement in protected activity. *Id.*

The second element, commonly referred to as the causation element, can be established in three ways. A plaintiff may prove causation based on (1) a suspicious temporal proximity between the protected activity and the adverse action or (2) a pattern of antagonism between the plaintiff and the defendant. *Lauren W. ex rel Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.

Case 2:13-cv-01328-MMB Document 206 Filed 06/23/16 Page 5 of 13

2007).[2] If a plaintiff is unable to establish causation using either of those methods, then a plaintiff may show that an inference of causation is merited based on "evidence gleaned from the record as a whole." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

But a showing of these three factors is sufficient only if the plaintiff also submits evidence that the defendants knew, at the time they made the decision to take the adverse action, that the plaintiff engaged in the protected activity. *See Volek v. Redev. Auth. of Cty. of Fayette*, 24 F. Supp. 3d 473, 486-92 (W.D. Pa. 2014) (evaluating plaintiff's causation arguments but always requiring proof of knowledge). As the Third Circuit has remarked, "[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose*, 303 F.3d at 493.

Thus, this Court having put Defendants' knowledge squarely at issue, Jerri, Sr. may avoid summary judgment only by pointing to some evidence from which a jury could conclude that each Defendant knew that Jerri, Sr. engaged in protected speech. As this is summary judgment, the Court must make all reasonable inferences and resolve all doubts in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV. Evidence of Defendants' Knowledge

At this stage in the litigation, three Defendants remain: (1) Frederick Harran, the Director of Public Safety for Bensalem Township, (2) Joseph DiGirolamo, the Mayor of Bensalem

---

[2] *Deflaminis* involved a retaliation claim under the Rehabilitation Act, but "[t]he elements of a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment and under the Rehabilitation Act are the same." *Deflaminis*, 480 F.3d at 267.

Township, and (3) Patrick Ponticelli, the Deputy Director of Public Safety for Bensalem Township.[3]

In conjunction with Defendants' statement of contentions, affidavits were submitted by each remaining Defendant. ECF 190-1 Ex. C. Each affidavit was signed on December 14, 2015, and in each one the affiant states that he learned of Jerri, Sr.'s allegedly protected communications only through this litigation. Thus, Defendants have submitted evidence from which a jury could reasonably conclude that Defendants lacked knowledge.

The remaining issue is whether Jerri, Sr. has submitted evidence from which a jury could reasonably conclude that each Defendant had the requisite knowledge.[4]

### A. Defendant Harran

Defendant Frederick Harran is the Bensalem Township Public Safety Director. In support of Jerri, Sr.'s argument that Harran knew that Jerri, Sr. had engaged in protected speech, Jerri, Sr. points to numerous pieces of evidence:

- Harran's deposition testimony that, after a meeting between Harran and Jerri, Sr. about the budget, Jerri, Sr. "left [Harran's] office and continued to spread [Jerri, Sr.'s] lies;"[5]

---

[3] Jerri, Sr.'s retaliation claim was originally brought against Defendants Harran, Ponticelli, Monaghan, and DiGirolamo. At a hearing on April 12, 2016, Plaintiff agreed to dismiss Defendant Monaghan.

[4] Jerri, Sr. relies repeatedly on his Amended Complaint as evidence supporting summary judgment, though typically in combination with actual evidence. ECF 43. Pleadings are not documents that can support factual assertions at summary judgment. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case."). As a result, this Court has disregarded Jerri, Sr.'s citations to his Amended Complaint.

[5] ECF 135, Ex. 7, 107:5-22.

- Harran's indication "that there are problems with the [Union] fire company and they have been shut down in the past for not following the rules;"[6]

- Jerri, Jr.'s deposition testimony that he had heard one of Harran's underlings tell someone that the insurance fraud case involving Jerri, Jr. was "highly political;"[7]

- Harran's memo memorializing that two Town Councilmen had believed that the issues with Union Fire Company were the result of "a personal vendetta between [Harran] and Union Fire Company;"[8]

- Jerri, Sr.'s deposition testimony that, in reference to an August 2011 Town Council meeting, Harran told Jerri, Sr. that Harran did not like Jerri, Sr. "talking shit about him;"[9] and

- an affidavit from another firefighter in the Union Fire Company stating that he and other firefighters had made complaints to Harran about problems with a grant application.[10]

The Court finds at least the first of these persuasive. In his deposition, Harran testified that, after a meeting between Harran and Jerri, Sr. about the budget on January 31, 2012, Jerri, Sr. "left [Harran's] office and continued to spread [Jerri, Sr.'s] lies." ECF 135, Ex. 7, 107:5-22. Defendants argue that this "spreading lies" comment concerned Jerri, Sr.'s comments to the

---

[6] ECF 135, Ex. 46 at internal 6. In his briefing, Jerri, Sr. says this diary entry reflects Harran's statement that the fire company was "causing problems." But this diary entry does not contain that quotation, and in fact the entire entry is about David Jerri, Jr., not David Jerri, Sr.

[7] ECF 135, Ex. 17, 140:3-14, 177:8-23.

[8] ECF 135, Ex. 30 at 1.

[9] ECF 135, Ex. 1, 103:6-14.

[10] ECF 135, Ex. 3 ¶ 33.

membership of Union Fire Company, which would not be protected speech. ECF 205 at 4. But, at the Summary Judgment stage, this Court must make all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. Although a jury may agree with Defendants' explanation of this statement, it could also be persuaded by Jerri, Sr.'s position that "spreading lies" would refer to Jerri, Sr.'s protected communications, especially given the plain meaning of the word "spreading."

Thus, taking the evidence in the light most favorable to Jerri, Sr., the Court finds that a jury could conclude that Harran knew of at least some of Jerri, Sr.'s protected speech based on this comment. Because Harran's deposition testimony supports this conclusion, the Court need not evaluate the other evidence Jerri, Sr. offers as to Harran.

### B. Defendant DiGirolamo

Jerri, Sr. advances two arguments regarding Mayor DiGirolamo's knowledge. First, Jerri, Sr. argues that his interrogatory answers show that he told DiGirolamo about Jerri, Sr.'s reports to law enforcement. Second, he argues that DiGirolamo's inconsistent explanations for shutting down the Union Fire Company should satisfy the causation requirement as to DiGirolamo.

In Jerri, Sr.'s supplemental interrogatories, he claims that he informed DiGirolamo of Jerri, Sr.'s "complaints and reports of waste, misconduct, and illegality being engaged in by he [sic] and government officials within the Bensalem Township." ECF 135, Ex. 5, Supp. Resp. to Interrog. 11. He then explains that "[t]he date and substance of this protected activity is detailed in response to Interrogatory #4 above, including dates when I made these complaints to him." *Id*. But in the response to Interrogatory #4, Jerri, Sr. mentions only instances in which he informed DiGirolamo of Jerri, Sr.'s concerns, failing to mention any instances in which he told DiGirolamo about Jerri, Sr.'s complaints and reports elsewhere. ECF 135, Ex. 5, Supp. Resp. to

Interrog. 4. Jerri, Sr. never mentions any instances in which he told DiGirolamo that he had communicated with the press or with any individuals who were not part of Jerri, Sr.'s chain of command.[11] Thus, although Jerri, Sr.'s interrogatories include a bald assertion that Jerri, Sr. informed DiGirolamo of Jerri, Sr.'s "complaints and reports," Jerri, Sr.'s detailed explanation of what those communications entailed reveals that he never told DiGirolamo about external complaints or reports. Thus, the interrogatory responses are insufficient to create a triable issue of fact about whether DiGirolamo knew of Jerri, Sr.'s protected speech.

Jerri, Sr. also argues that inconsistencies between DiGirolamo's deposition statements and his 2012 statements should permit the inference that DiGirolamo knew that Jerri, Sr. had engaged in protected speech. ECF 204 at 6. According to Jerri, Sr.'s supplemental interrogatories, in and around July 2012, DiGirolamo publicly stated that Jerri, Sr. was incompetent, was a threat to public safety, and had to be removed. ECF 135, Ex. 5, Supp. Resp. to Interrog. 5. But at DiGirolamo's deposition, he responded "no" when asked whether he was "aware of any problems with Chief David Jerri, Senior which led to the suspension [of the Union Fire Company] in 2012." ECF 135, Ex. 6 at 127:19-22.

Jerri, Sr. argues that a jury could reasonably infer causation because DiGirolamo's inconsistent statements reveal that his reasons for forcing Jerri, Sr.'s termination were mere

---

[11] Jerri, Sr. provides a laundry list of issues about which he communicated with DiGirolamo, but noticeably absent from this list is any mention of Jerri, Sr. communicating with DiGirolamo about any protected speech. For example, Jerri, Sr. mentions a meeting in the summer of 2011 in which he complained directly to DiGirolamo about Jerri, Sr.'s predecessor's termination. ECF 135, Ex. 5, Supp. Resp. to Interrog. 4. Jerri, Sr. also mentions that DiGirolamo heard Jerri, Sr. attempt to make complaints at an August 2011 Town Council meeting, at which time DiGirolamo invited Jerri, Sr. to make an appointment with the mayor's office. *Id.* Jerri, Sr. called to make the appointment, but the call was never returned. *Id.* He also mentions that DiGirolamo refused to discuss the list of reasons for closing the Union Fire Company or for terminating Jerri, Sr.'s predecessor. *Id.* None of these communications would have revealed to DiGirolamo that Jerri, Sr. had engaged in protected speech.

pretext. Defendants have not responded to this argument, other than to state that causation and knowledge are distinct requirements. Neither party has submitted any cases indicating whether evidence of knowledge is required when causation is established through a showing of pretext.

Based on Plaintiff's pretext arguments, two legal issues emerge: (1) Can a plaintiff establish causation by showing pretext? (2) Does such a showing require separate evidence of knowledge?

As to the first legal issue, it appears the answer is yes. In the context of a Title VII and ADEA retaliation claim, the Third Circuit indicated that causation may be established based on the "circumstances as a whole," including "inconsistencies in the reasons the employer gives for its adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). The Court has also discovered two cases in which plaintiffs attempted to show causation by showing pretext. *Lauren W. ex rel Jean W. v. Deflaminis*, 480 F.3d 259 (3d Cir. 2007); *Volek v. Redev. Auth. of Cty. of Fayette*, 24 F. Supp. 3d 473 (W.D. Pa. 2014). In both cases, the courts considered the pretext arguments in the context of causation, but ultimately concluded that the plaintiffs had failed to establish that the defendants' statements were pretextual. *Deflaminis*, 480 F.3d at 271; *Volek*, 24 F. Supp. 3d at 489-91. Because the courts concluded that the plaintiffs had failed to show pretext, these courts never had to address whether causation is capable of being shown through evidence of a defendant's pretextual explanation for taking adverse action against a plaintiff. For the purpose of deciding a summary judgment motion, the Court will give plaintiff the opportunity to establish causation through a showing of pretext at trial.

As to the second legal issue, it appears the answer is also yes. In its recent decision involving a Title VII and ADEA retaliation claim, the Third Circuit indicated that a plaintiff must always show knowledge. After reciting a number of ways in which a plaintiff can establish

causation, the court clarified: "The plaintiff, however, cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Although this case arose under a different statute, the doctrines governing Title VII retaliation claims and First Amendment retaliation claims are sufficiently similar to convince this Court that a showing of knowledge is always required, even when the plaintiff attempts to show causation by showing pretextual reasons for adverse employment action.[12] Thus, Jerri, Sr. must show that DiGirolamo knew of the protected speech regardless of the means by which Jerri, Sr. intends to prove causation.

Jerri, Sr.'s only remaining argument that DiGirolamo had the required knowledge is based on DiGirolamo's pretextual explanation for his actions. The Court has been unable to locate any cases in which an inference of knowledge was permissible based solely on evidence of pretext. *Cf. Volek*, 24 F. Supp. 3d at 473 (rejecting plaintiff's summary judgment argument that defendant's pretextual explanation for adverse action satisfied the causation element because the court concluded the all of defendant's explanations were consistent). Nonetheless, this Court finds that a jury may be entitled to infer that Defendant DiGirolamo knew of Jerri, Sr.'s protected speech based on DiGirolamo's pretextual explanation for his actions coupled with the established antagonism between Jerri, Sr. and Bensalem Township officials. Although the evidence would

---

[12]   Although *Daniels* involved Title VII and ADEA claims, "but-for" causation is the standard of liability for retaliation claims under both Title VII and 42 U.S.C. § 1983 First Amendment retaliation claims. *Compare Univ. of Texas SW Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."); *with Bd. of Cty. Com'rs, Wabaunsee Cty., Kan. v. Umber*, 518 U.S. 668, 685 (1996) (explaining that a defendant in a First Amendment retaliation case can avoid liability by showing that the defendant would have made the same decision regardless of the plaintiff's involvement protected activity).

not compel this result, Jerri, Sr. has created a genuine issue of fact on the knowledge requirement that is sufficient to preclude summary judgment.

### C. Defendant Ponticelli

In its May 4, 2016 Order, this Court asked for knowledge evidence as to only Defendants Harran and DiGirolamo. ECF 202. Nonetheless, at this time it is also prudent to address such knowledge evidence as to Defendant Ponticelli, which may be the strongest knowledge evidence Jerri, Sr. offers against any Defendant.

According to Jerri, Sr.'s interrogatories, Ponticelli and Jerri, Sr. were both present at a September 2011 Fire Chiefs' Meeting. At this meeting, Ponticelli threatened Jerri, Sr. with arrest if he spoke to the public or the press regarding public safety issues in Bensalem Township. Additionally, Jerri, Sr. accuses Ponticelli of telling the room that Jerri, Sr. "was leaking information that was endangering police officers and that I should be taken out back and taken care of." ECF 135, Ex. 5 Supp. Resp. to Interrog. 4, 7.

Defendants respond to this argument by pointing to Jerri, Sr.'s deposition testimony, which they argue puts these statements in context and disproves the statements Jerri, Sr. made in his interrogatories. This deposition testimony is as follows:

> Q: How were you retaliated against for raising the issue of other companies having and 15 year olds fighting structural fires?
>
> A: Well, Assistant Public Safety Director Ponticelli played a videotape of me at a chief's meeting trying to embarrass me from Ms. Sadler prior to the chief's meeting and after the chief's meeting for anybody who wanted to watch it. He also sent a letter to Stephen Carmichael stating that he had evidence that a member of the Union Fire Company was leaking sensitive information to the public. I wasn't leaking sensitive information to anybody. A resident asked me a question and I would honestly answer it.

ECF 205, Ex. A.

Although this deposition testimony tends to undermine Jerri, Sr.'s interrogatory responses, the evidence is not wholly inconsistent. Defendants asked Jerri, Sr. a very narrow question in his deposition, and his response does not preclude the possibility that he was accused of being a leak during the meeting in addition to in writing. At summary judgment the Court may not weigh the credibility of evidence,[13] and given that these two pieces of evidence are not entirely inconsistent, the Court must give Jerri, Sr. the benefit of favorable inferences. Based on both the deposition testimony and the interrogatory responses, it would be reasonable for a jury to infer that Ponticelli knew that Jerri, Sr. had engaged in protected speech based on Jerri, Sr.'s recollection that Ponticelli told people that Jerri, Sr. was "leaking information" and based on Ponticelli's threats.

## VI.     Conclusion

An appropriate order follows.

O:\CIVIL 13\13-1328 jerri v. harran\13cv1328 SJ Order 6.21.16.docx

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).